IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT PHASON, JUAN ORTIZ, CLIFFORD RUSH, and RICHARD ZIMMERMAN, individually and on behalf of a class of similarly situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 04 C 5845 |
| MERIDIAN RAIL CORP, | ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, District Judge:

Before the court in this class action lawsuit are the parties' cross-motions for summary

judgment (Dkt. Nos. 63 and 69) and a motion filed by the plaintiff class to strike the declaration

of Beverly Peterson (Dkt. No. 88). In the complaint, the plaintiff class alleges that Meridian Rail

Corporation ("Meridian") failed to provide notice of a plant closing or mass layoff pursuant to

the Worker Adjustment and Retraining Notification Act ("WARN"), *see* 29 U.S.C. § 2101 *et*

*seq*. After reviewing the record and the respective parties' arguments, this court grants the

defendant's motion for summary judgment (Dkt. No. 63) and denies the plaintiff class's motion

for summary judgment (Dkt. No. 69). The court dismisses the plaintiff class's motion to strike

(Dkt. No. 88) as moot.

BACKGROUND

A.      Factual Background

The alleged WARN violation at issue involves Meridian's sale of a plant in Chicago Heights to NAE Nortrak, Inc. ("Nortrak"). In addition to employing salaried employees, Meridian employed hourly union workers at that plant. There were also 6 hourly employees at a nearby location that both parties agree are included in the sale of the Chicago Heights plant to Nortrak. Prior to that, the local union and Meridian entered into a collective bargaining agreement that went into effect on April 24, 2002 and included in Article 7 rights of seniority and recall of up to two years after a layoff for hourly union workers. In September 2002, Meridian laid off 31 hourly union employees with contractual rights under the collective bargaining agreement of seniority and recall until September 2004. Meridian again in September 2003 terminated the employment of 19 hourly workers with those same rights until September 2005. The parties dispute whether the laid-off workers were entitled to be recalled. To support its position that the layoffs in September 2002 and 2003 were permanent, Meridian provides the declaration of a former human resources manager from Meridian, Beverly Peterson ("Peterson"). The class objects to Peterson's declaration and has filed a motion to strike it. That motion is moot because the court has not relied upon Peterson's declaration in reaching its decision.

On December 19, 2003, Meridian and Nortrak negotiated an asset purchase sale. Subsequently, Meridian informed its employees on December 31, 2003 that Meridian would close its production operations at the Chicago Heights plant one week later on Wednesday, January 7, 2004. The closing of the sale between Meridian and Nortrak was on January 8, 2004. On December 15, 2003, three weeks before the sale closed, purchaser Nortrak sent out a notice to the active Meridian employees that it would be accepting applications for employment up to and including December 19, 2003. The notice was also printed in the newspaper. (Zimmerman

Dep. at 88.)  Named plaintiff and union official Richard Zimmerman ("Zimmerman"), called

each laid-off member by telephone to inform them that Nortrak was accepting applications.

(Zimmerman Dep. at 88-89.)  In total 113 applicants applied to Nortrak.  (Def. Mem. Summ. J.,

Johnston Decl., Ex. 3.)  Many of these applicants were former Meridian workers though neither

party identifies the exact number of former Meridian employees who applied.

Nortrak Human Resource Manager, Clay Johnston ("Johnston"), provided a declaration

regarding the hiring of Meridian employees at Nortrak, which the plaintiff class does not

dispute.[1]  Attached to Johnston's declaration are several exhibits listing the names of active

Meridian workers at the time of the sale ("Exhibit 1"), the names of all applicants who applied to

Nortrak to be hourly employees ( "Exhibit 3"), and the names of individuals that Nortrak hired

("Exhibit 4").  In Johnston's declaration, he states in paragraph 7 that "36 of the 126 Meridian

employees were not hired by Nortrak."  (Johnston Decl. ¶ 7.)  The plaintiff class does not dispute

this figure.  (Pl. Resp. ¶¶ 20-27).  Neither does the plaintiff class dispute Meridian's statement

that 29 of those 36 active employees not hired by Nortrak were hourly workers of Meridian.

(Def. L.R. 56.1 ¶ 27; Pl. Resp. ¶ 27.)  In paragraphs 8, 9, 10, and 11, Johnston's declaration

names 5 active Meridian employees who voluntarily chose not to seek employment with Nortrak

---

[1]The class informally objected in its Response to Defendant's Local Rule 56.1 Statement of Facts to Johnston's declaration, alleging that Meridian provided in its Federal Rule of Civil Procedure 26(a)(1) disclosures only Johnston's name and not his address and telephone number in violation of Federal Rule of Civil 26(e)(1).  The class, however, did not and does not dispute the statements in Johnston's declaration.  To the extent the class lodges an official objection, the objection is overruled.  This court will not sanction a party by striking that party's evidence for a violation of Rule 26(e)(1) where that party can show that the violation was either justified or harmless.  *See David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003).  Because the class does not dispute Johnston's statements in his declaration and had access to Johnston's name and position at Nortrak, this court finds any Rule 26(e)(1) violation by Meridian to be harmless.

for various reasons. Deducting the 5 Meridian employees who chose not to work for Nortrak from the 36 former Meridian employees not hired by Nortrak leaves 31 active employees who sought employment with Nortrak but were not hired.

The plaintiff class asserts that there were 165 Meridian workers actively employed at the time of the sale, and that 85 of those workers were hired by Nortrak. (Pl. L.R. 56.1 ¶¶ 1, 3.) The plaintiff class provides no factual basis for these figures other than plaintiff Zimmerman's testimony in his deposition. Zimmerman, however, admits in his affidavit that he did not know the exact number of Meridian employees hired. (*Id*., Ex. 3, Zimmerman Aff. ¶ 29.) Zimmerman's estimations are inadmissible under Federal Rule of Evidence 602 because they are not based on personal knowledge. *See Stinnett*, 301 F.3d at 613.

This court therefore accepts the personnel figures supported by statements in Johnston's declaration, which have not been disputed by the plaintiff class, and in Exhibits 1, 3, and 4 attached to Johnston's declaration, which also have not been disputed by the plaintiff class. (Pl. Resp. ¶¶ 20-27.) According to Meridian, there were 126 active employees at Meridian at the time of the sale to Nortrak, 90 of whom were hired by Nortrak. This number, however, does not reveal how many workers, who were active or with recall rights, sought employment at Nortrak and were rejected. For that, this court must rely on Exhibit 3 to Johnston's declaration, the list of applicants who applied to Nortrak.

Based on this court's review of the exhibits attached to Johnston's declaration and Johnston's statements, which are not disputed by the plaintiff class, and viewing the evidence in the light most favorable to the plaintiff class, this court finds that the undisputed evidence establishes sufficient facts about the applicants who applied to Nortrak during the relevant period

of December 15, 2003 through December 19, 2003 for the court to make a determination on the

parties' motions for summary judgment. Comparing the names of active Meridian workers at the

time of the sale (Ex. 1) to the list of applicants (Ex. 3) and the list of employees ultimately hired

by Nortrak (Ex. 4), this court finds that the applicants listed in Exhibit 3 were hourly employees.

Three of those hourly employees—Rickey Crose, Fidel Desiderio, and Luis Gonzalez—were

hired into salaried positions at Nortrak. (Exs. 3 and 4.) In addition, 7 hourly workers hired by

Nortrak on January 19, 2004 and later (Ex. 4) are not included in the list of applicants (Ex. 3).

Otherwise, both parties agree that the list of the 113 applicants (Ex. 3) is a complete list of

applicants, excluding those salaried active employees who applied for a position.[2] (Def. L.R.

56.1 ¶ 18; Pl. Resp. ¶ 18.)

The parties did not delve deeper into the list of applicants (Ex. 3). This court, however,

finds that task essential to an appropriate analysis. Comparing the list of persons applying to

Nortrak (Ex. 3) with the list of those hired by Nortrak (Ex. 4), there were 41 applicants of the

113 total who were not hired by Nortrak.[3] That 41 number was determined by subtracting the 72

hourly applicants hired by Nortrak as set forth in Exhibit 4, including the additional 3 hourly

Meridian employees hired into salaried positions, from the 113 total applicants listed in Exhibit

3. Knowing that 41 applicants were not hired by Nortrak from the list of 113 candidates (Ex. 3)

---

[2]Some names of employees were spelled differently among Exhibits 1,3, and 4, but despite the typos in their names, this court has still been able to discern the identities of the employees.

[3]These calculations exclude the salaried Meridian employees hired by Nortrak into salaried positions as well as those salaried Meridian employees not hired. As later explained in this opinion, the court, however, will add those individuals into the total as part of the full analysis of the court.

and knowing, as both parties agreed, that 29 active hourly employees who applied to Nortrak were not hired (Def. L.R. 56.1 ¶ 27, Pl. Resp. ¶ 27), it is clear that 12 applicants (41-29=12) who were not active employees of Meridian at the time of the sale were not hired by Nortrak.

Johnston also provided undisputed evidence regarding Nortrak's hiring of laid-off Meridian workers. According to Johnston, Nortrak hired 3 hourly employees of the 31 who had been laid off in September 2002 and 17 of the 19 hourly employees laid off in September 2003.

Problematically for the determination of summary judgment, neither party has identified the names of the employees with recall rights who were laid off in September 2002 and 2003 and who later applied to Nortrak but were not hired. The closest Meridian comes is on page 12 of its memorandum in opposition to the plaintiffs' summary judgment motion (Dkt. No. 78), where Meridian refers to a seniority list (Zimmerman Dep., Ex. 3) about which Zimmerman was questioned at his deposition. That exhibit lists only 18 of the 31 employees laid off in September 2002. Meridian states without further citation to the record that four of those 18 workers laid off in September 2002 on the seniority list did not apply for employment. (Def. Mem. in Opp'n at 12).

B.     Procedural History

The plaintiffs filed this class action lawsuit on September 7, 2004, alleging that Meridian violated the WARN Act. On April 18, 2006, this court granted the plaintiffs' motion for class certification based upon the record as it had been presented to the court at that time. The certified class was defined in this court's order as all "[s]alaried employees and active hourly and laid-off hourly employees with valid contractual rights of seniority and recall at the Chicago Heights plant who lost their employment when Meridian Rail Corporation sold the plant to VAE

Nortrak Incorporated and they were not hired by VAE Nortrak Incorporated." (Dkt. No. 73).[4] At the time of that class certification, the plaintiffs estimated that the class would total 77 former employees of Meridian. Of those 77 individuals, 40 putative class members would be active hourly employees not hired by Nortrak, 7 would be salaried or managerial employees, and 30 would be laid-off employees (28 from the September 2002 layoff and 2 from the September 2003 layoff) who maintained contractual seniority and call-back rights under the collective bargaining agreement. The four named plaintiffs, Robert Phason, Juan Ortiz, Clifford Rush, and Richard Zimmerman, were all former union officers employed as hourly workers at the Chicago Heights plant at the time of the plant's closing and sale. In its motion for summary judgment, Meridian disputes these numbers, pointing to five employees who for various reasons chose not to be rehired by Nortrak and who should be excluded from the class, and the plaintiff class in its response to Meridian's L.R. 56.1 Statement of Facts now appear to accept Meridian's calculations as to this point. (Pl. Resp. ¶¶ 20-24.)

## STANDARD OF LAW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, this court takes all facts and inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a

_____

[4]There is also a pending motion to revise class certification. (Dkt No. 76).

genuine issue for trial.  A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies.  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003).  Moreover, the evidence relied upon must be competent evidence of a type otherwise admissible at trial.  *Stinnett v. Iron Work Gym/Exercise Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

<u>ANALYSIS</u>

A.    WARN Act.

Despite the absence of evidence regarding the number of the laid-off employees with contractual rights of seniority and recall who applied to Nortrak, Meridian still has established that there is no genuine dispute of material fact with regard to the plaintiff class's failure to satisfy the requirements of the WARN Act.  It is uncontested that Meridian is an "employer" under the WARN Act and gave no WARN Act notice to its employees when it sold its business to Nortrak.  At issue is whether Meridian was obligated to give the notice.  The WARN Act requires employers who employ more than 100 employees to provide a 60-day warning of a plant closing or mass layoff if the shutdown or layoff results in an employment loss at a single site of employment during any 30-day period for 50 or more employees, excluding part-time employees.  29 U.S.C. § 2101(a).  For a mass layoff, the 50 or more employees must either be 33 percent of the employees at the site or there must be at least 500 employees at the site.  *Id.*  Part-

time employees are those employed an average of less than 20 hours a week or have been employed "for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8). "Workers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees." 20 C.F.R. § 639.3. A reasonable expectation of recall is where an employee understands "through notification or through industry practice" that employment has been temporarily interrupted and the employee "will be recalled to the same or a similar job." *Id.* The WARN Act protects only those workers who suffered an "employment loss," defined as "an employment termination, other than a discharge for cause, voluntary departure, or retirement; a layoff exceeding 6 months; or a reduction in hours of work of more than 50 percent during each month of any 6- month period." *See* 29 U.S.C. § 2101(a)(6).

If the number of plaintiff class members does not reach the 50-or-more-employee threshold required by the WARN Act, the class cannot establish that Meridian failed to give proper notice of the plant closing. Based on the lists attached as exhibits to Johnston's declaration, this court finds that 50 or more former and active Meridian employees did not suffer an employment loss. Accepting as a fact that 31 active Meridian employees, salaried and hourly, were affected by Meridian's sale of its plant to Nortrak (a fact undisputed by the class), the class needs to establish that (1) at least 19 workers laid off in September 2002 and 2003 also suffered an employment loss under the WARN Act, and that (2) those laid-off workers are considered affected employees under the Act. Because this court finds that the class has not demonstrated that at least 19 laid-off workers suffered an employment loss, this court need not address the second, less settled issue of whether these laid-off workers should be counted under the WARN Act.

A voluntary departure is excluded from the definition of employment loss. 29 U.S.C. § 2101(a)(6). The decision not to apply for a position with Nortrak would be considered a voluntary departure for an employee who chose not to continue his or her employment with the plant. *See Wiltz v. M/G Transp. Servs., Inc*., 128 F.3d 957, 963 (6th Cir. 1996); *see also Castro v. Chicago Housing Auth*., No. 99 C 6910, 2003 WL 21518321, at *11 (N.D. Ill. July 3, 2003), *affirmed* 360 F.3d 721 (7th Cir. 2004). For the class to establish that at least 19 laid-off workers suffered an employment loss from Meridian's sale of the plant to Nortrak, the class must demonstrate first and foremost that those employees wished to be hired by Nortrak; otherwise, their circumstance would be a voluntary departure and not an employment loss protected by the WARN Act. Neither Meridian nor the class provided this court with the names of the laid-off workers and specifically whether the laid-off workers sought employment from Nortrak. The absence of this information hampers but does not entirely curtail the court's ability to address these two motions.

The exhibits attached to Johnston's declaration provide sufficient evidence for this court to determine that less than 19 laid-off, hourly workers suffered an employment loss due to the plant closing and sale. As this court stated in the factual background, 41 individuals of the 113 hourly applicants to Nortrak were not hired. (Exs. 3 and 4.) Subtracting from those 41 individuals the 29 active hourly workers who applied to Nortrak (Def. L.R. 56.1 ¶ 27, Pl. Resp. ¶ 27), this court finds that 12 individuals who applied to Nortrak during the relevant period of December 15 through December 19, 2003 were not active hourly workers employed by Meridian at the time of the sale. Because all of the workers with recall rights laid off in September 2002 and 2003 were hourly employees that would be included on Nortrak's list of applicants (Ex. 3),

this court finds based on the undisputed facts that, at most, only 12 laid-off, hourly workers applied for a position at Nortrak. The remaining laid-off workers who chose not to apply to Nortrak did not suffer an employment loss protected by the Act. The decision not to work at Nortrak was voluntary.

The class responds to these calculations by arguing that the laid-off workers may not have had notice of the brief window between December 15, 2003 to December 19, 2003 during which Nortrak was hiring. In support of this theory, the plaintiff class points to Zimmerman's statement that he called each laid-off worker. The plaintiff class asserts in its reply to its summary judgment motion (Dkt. No. 90) that Zimmerman did not state in his deposition that he *spoke* to all laid-off employees and that "it is not clear that all laid-off workers received this message in time." (Pl. Reply at 9). This court disagrees with the plaintiff class's interpretation of Zimmerman's statement that he called the employees on layoff on the phone and told them to "go over and put an application in." (Zimmerman Dep. at 88-89.) Even in the court's consideration of the evidence in the light most favorable to the plaintiff class, the plain meaning of Zimmerman's statement is that he gave notice to every laid-off worker. Moreover, the plaintiffs represent a class that includes these laid-off workers. If any of the laid-off workers were not contacted, this court would expect counsel for the class, as the legal representative of a class that includes the laid-off workers, to have presented in the record in opposition to Meridian's summary judgment motion testimony from any laid-off worker who did not receive notice.

Because the undisputed evidence in the record establishes that less than 19 laid-off workers suffered an employment loss, this court finds that the plaintiff class cannot establish that

50 or more employees suffered an employment loss due to Meridian's sale of the plant to Nortrak. Because this court's finding is dispositive of Meridian's motion for summary judgment, the court need not address the parties' remaining arguments.

This court's decision on summary judgment also affects the previous court order to certify the class. The court rested its decision to certify the class on the plaintiffs' representation that 50 or more putative class members were "affected employees" under the WARN Act. On summary judgment, this court finds that the evidence does not support the plaintiffs' representation. Based on this finding, the court now decertifies the class. *See Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 287 n.3 (N.D. Ill. 2006) (court may review and modify class certification pursuant to evidentiary developments). Furthermore, the class's motion to strike (Dkt. No. 88) is rendered moot because this court in making its decision did not rely in any way on Peterson's declaration.

CONCLUSION

Accordingly, this court grants the defendant's motion for summary judgment (Dkt. No. 63) and denies the plaintiff class's motion for summary judgment (Dkt. No. 69). The court dismisses as moot the plaintiff class's motion to strike (Dkt. No. 88). The class is decertified but judgment is not entered because there is still a pending motion to revise class certification that this ruling does not moot. The parties are again encouraged to discuss settlement to resolve this case in its entirety. Trial dates are stricken. This court will set further dates, if necessary, in its ruling on the motion to revise class certification.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: May 8, 2006